Good morning. May it please the Court. Eliodoro Moreno, Jr. for the Petitioner, Rodrigo Solano-Rivera. The threshold question is whether this Court has jurisdiction over this case. The cases cited in the 28J letter and the motion for supplemental briefing we filed yesterday raise serious, serious jurisdictional questions in this case. Primarily, if this Court were to ultimately conclude that it does not have jurisdiction, that conclusion would raise serious suspension clause concerns, because Mr. Solano would effectively be deprived of judicial review. Well, you're saying because it wasn't clear at the time. Well, yes, Your Honor, because at the time of the BIA's decision, February 28th of 2007, this Court's decision in Molina-Camacho precluded him from filing a petition for review of that decision. However, as we cited, it would seem that Abdicillan, the Court's decision that was issued on Friday, along with Pinto v. Holder, seemed to suggest that now the Respondent or, excuse me, the Petitioner was supposed to have filed a petition for review within 30 days of that decision. If you're right about Molina-Camacho, then the later cases are in conflict with it, and what we have is just a setup that we should have an en banc on the whole matter. Well, Your Honor, this Court's en banc decision in Lolon overturned Molina-Camacho on this jurisdictional question, and the Court in Pinto and Abdicillan specifically relied on the reasoning in Lolon on the jurisdictional issue. Therefore, we say because Lolon then went ahead and overturned Molina-Camacho, that in effect would create a suspension clause concern. The problem, of course, is that sort of that's kind of how the law works, i.e., the one has essentially retroactive decisions that are – which purport to be the law all along. Yes. Yes, Your Honor. And that is understood, that the Court's case law suggests that jurisdictional changes in the law have to be applied retroactively. But that also underscores why we think that this creates a suspension clause problem, because now it seems like if the Court were to conclude that there's no jurisdiction, we are not prepared to concede on that point. That's one of the reasons why we're requesting supplemental briefing on the jurisdictional issue. Then he would have effectively be deprived. However, the Court does have a mechanism, which we also suggested in our request for supplemental briefing, is that under 28 U.S.C. 1631, this Court, after finding that it does not have jurisdiction, and if it finds that in the interest of justice it should go – it should remand this or transfer this case, excuse me, to the district court, then it should do this so that the district court can consider under habeas the issue, the issues on the merits in this case. Help me out. Is Pinto the case that turns this issue around? No, Your Honor. The – Or are you relying on the most recent one from September 6th? It's the most recent one. Now, Pinto v. Holder specifically held that a Petitioner, that the Court did have to review even though the Board of Immigration Appeals had remanded for a consideration of voluntary departure. It was Abdisalaam that was the first one that specifically held the converse. And from our initial research – Actually, an earlier opinion, isn't there, on the Pinto point, or essentially on the Pinto point, from 1995, Castrillon-Garcia v. INS? Go ahead, yes. Yes. Yes, Your Honor. And Loh-Long did rely on that case when it started to address its reasoning. However, Your Honor, we would argue that Molina Camacho is directly on point in this issue, because the main issue is whether in Molina – well, excuse me, yeah. In Molina Camacho, the issue is whether the BIA, in the first instance, can issue an order of deportation in that case. And whether finding someone deportable is the same as having an order of deportation. We would posit that it is not. That is what Molina Camacho held. Right. But Loh-Long reversed that, interpreting 8 U.S.C. 1101 A. 47a, which specifically indicates what's a final – or what's an order of deportation for purposes of judicial review. We believe that that's an incorrect interpretation. However, of course, since we understand that these issues are complicated, that's one of the reasons why we would like to be able to submit supplemental briefing on this particular issue. I'm – I have not asked my colleagues, but I would certainly be able to as well. Yes, no, no, no, of course, Your Honor. However, if the Court doesn't have any more questions on that jurisdictional issue, I would like to get to the merits of this case, if the Court were to find there is jurisdiction. The immigration judge in the BIA erred in finding that the DHS presented prima facie evidence that Mr. Solano assisted or ordered, incited, assisted, or otherwise participated in the persecution of others on account of a protected ground. Well, that comes from the regulations, Your Honor, at 8. Isn't it regulation only applied to applications filed before April 1, 1997? Well, Your Honor, we would argue that it does not. And that because the – so, Your Honor, we would argue that it does not, that it applies to all applications, even the ones applied or submitted after that, and that this Court applying that section to – from resettlement in Maharaj v. Gonzales indicated that the DHS has a threshold burden of showing – Well, even if it does, why doesn't the interview meet the threshold burden? Well, the asylum officer notes would be the only evidence that the government submitted. Right. Why isn't that a threshold burden? Yes. Well, it's not enough as a threshold burden because this Court has interpreted the threshold burden to be prima facie evidence. They have to present prima facie evidence that the persecutor bar applies, and prima facie has been – prima facie case is defined in Blackstall Dictionary as a party's production of enough evidence to allow the facturer to infer the fact at issue and rule in the party's favor. Well, is there any reason why Solano's statements to the asylum officer cannot be the prima facie evidence that's satisfied? Yes, because those statements are completely ambiguous, Your Honor. It is very unclear from those statements what Mr. Solano is referring to when he's being asked. For example, when he's asked in the notes, and this is on the first two pages, it's 644 and 645, he's asked, duties in Bucaramanga. It's not clear if they're talking about duties – his duties, his battalion's duties, his unit's duties. Of course, in the English language, you or your can be used both for singular or plural. And he answered combat with the FARC. During his testimony, he wasn't inconsistent. He simply explained that, no, I was referring that my battalion's duties in Bucaramanga was to combat with the FARC. That were not my specific duties. The AO notes – Wasn't he the commander? Excuse me? Wasn't he the commander of a unit? He was the commander of one of the units, Your Honor. Usually, the battalion is the overarching – you can call it a unit, but it's a higher – it's the battalion, and usually it has units under it. I believe he testified that there were about six units within the battalion of about 30 or so soldiers. And he said that his unit's job was to train these soldiers. He didn't go out into combat. And the AO notes don't contradict that. They're ambiguous as to what they meant. But – Well, what you're really doing on this appeal, are you not, is challenging the reliability of the officer's notes and his testimony now in appeal when counsel down below, in fact, offered to stipulate to their reliability? Your Honor, we would concede that counsel below did stipulate to their reliability accurately in the way that they were written down. But that doesn't eliminate the ambiguity in the questions and the answers. Moving forward, one of the main things that the government attorney takes issue with is, did you hear – did you take any prisoners? He had just mentioned that he had taken a narcotics trafficker in 1979. What did you do with him? We gave him the superiors. Then it asks, did you hear about how these people being tortured? Never heard of them. And with guerrillas, were tortured, interrogated by G2. That's completely ambiguous. It doesn't mean, did he's the one that arrested them? No. Is he the one that handed them over? But more importantly, was it on account of a protected ground? When someone's in combat, which Miranda – which Miranda Alvarado made clear, citing to the court's case in Rodriguez-Majano, when someone's engaged in a civil war simply because one side detains prisoners from the other side, that doesn't mean that they are doing it because of an imputed political opinion or any other reason. Maybe they want to know troop movements. Maybe they want to know where weapons are stored. When someone's in a civil war, this court in Miranda Alvarado and the attorney general made clear that that's not on account of a protected ground. So even if we assume that he arrested them and that he handed them over, it's not on account of a protected ground. The record does not show that. Thank you very much. Thank you. What say you about jurisdiction? We do not oppose the motion at this time for supplemental briefing on jurisdiction given the issues that have been raised. The government was only served with this motion late yesterday, shortly after I'd arrived from Washington, D.C., and I haven't had a chance to investigate the cases and the claims that have been raised. Does the government – well, maybe I shouldn't ask you to give what you just said. I was just wondering whether the government has been championing this case law, for example, in Abdisallad v. Holder and Pinto v. Holder. It just strikes me not particularly in the government's interest to have these two separate proceedings running around, and I would have thought that the government would have preferred a single finality over divided case law. Historically, my office has taken the position that finality comes particularly when you have a remand for voluntary departure, that the administrative order becomes final after the agency rules on voluntary departure, which is the situation we had here. Right. Although we do acknowledge the Court's precedent in Pinto and now Abdisallad that seems to be in conflict with that position on finality. And I don't know this, but there was an adamant dissent in Abdisallad, and there is a good possibility of on-bank proceedings in which the government is going to have to take a position, presumably, at some point, quite possibly. Possibly, Your Honor. Again, I haven't had a chance to do that. So you don't know what – I mean, obviously, you can read the opinions and you're going to find that the government prefers that position. Your suggestion is probably not. I can't commit at this time, Your Honor. I would ask that the government – that the Court grant the motion for supplemental briefing. So you don't want to argue the jurisdiction at all now because you're really not prepared? Is that what you're saying? I'm sorry? You don't want to argue the jurisdiction at all now because you're really not prepared? Not at this time. We were not put on notice until late yesterday. So we were prepared to discuss the merits of this case. Right. We're going to have to do that then. Unless you have any further questions. Okay. Good morning, Your Honors. My name is Derek Julius. I am here on behalf of the Respondent of the United States Attorney General. We respectfully ask that you deny this petition to the extent you find you have jurisdiction because substantial evidence supports the agency's denial of asylum and withholding based on the persecutor bar where Solano Rivera's self-incriminating statements to the asylum officer that, quote, we handed them to intelligence, they tortured them, was sufficient to raise the persecutor bar application and his backtracking and inconsistent statements in immigration court provide substantial evidence for the adverse credibility decision, which the agency ultimately used to uphold the finding that he failed to rebut the application of that persecutor bar. Now, I gather that the government is not, that the BIA and IJA and the government now is not contesting the fact that there's a, that he is, he would otherwise meet asylum requirements? The asylum officer found that he would meet the definition of a refugee. I do not believe the immigration judge nor the board reached that alternative basis. They rested solely on the persecutor bar in denying relief and protection in this case. And he was in the military for a relatively short time and at this particular job for about four months, is that right? Correct, Your Honor. And he did protest both before and after and basically left for this reason. Is that right? At various points, he did claim that he had learned when he was, by the time he transferred from Santa Marta to Bucaramanga from going after narco-traffickers and people with ID deficiencies to Bucaramanga, where he told the asylum officer that their duties included combat with the FARC, that he had learned of suspected torture of a presumed guerrilla at that time, and that he had raised concerns with his supervisor at that time about that mistreatment. But that is partly part of the inconsistency in what he told the asylum officer and what he testified to an immigration court. But the threshold matter here is that the statements that he did make to the asylum officer were sufficient to raise the persecutor bar here. Under the so-called persecutor bar, it precludes an alien from receiving asylum or from being able to receive asylum if the attorney general determines that he ordered, incited, assisted, or otherwise participated in the persecution of an individual on account of a protected ground. And by regulation, if the evidence indicates that the persecutor bar applies to the applicant, he or she shall have the burden of proving by a preponderance of the evidence that the bar does not or that he or she did not so act. Do you think that regulation does apply? The 8 CFR section 1208.13? Yes. Okay. And so our position is that his admissions to the asylum officer that he had, quote, we handed them over to intelligence, they tortured them, is sufficient to meet that showing. In Miranda Alvarado v. Gonzales, this court used an alien's in-court testimony to trigger a presumption about the application of a persecutor bar where he had made statements about interrogating an alien. And so I don't think there's any vagary in the statements from the asylum officer's notes. They really, it doesn't matter, because the quote that I'm using here, that we handed them to intelligence, is, I don't know, I'm not saying that's necessarily     notes. But I think that it is, simply because in that context, it's never been challenged that he told the asylum officer that that phrase was used. He's used. But the question is whether that phrase is sufficient. Right. And I do think that it is. I think particularly when we're talking about that question was in response to a question about how the treatment differed between narco-traffickers and Santa Marta and how gorillas in Bucaramanga were treated. And his answer to that was, we handed them to intelligence, they tortured them. There's no ambiguity about who he was really talking to. And when you look at the asylum officer's testimony in immigration court, he said there were, from his perspective, there was no confusion about who they were talking about at that time. Petitioner wants to quibble with the, you know, whether he handed over 8 to 10 people for lack of identification in Santa Marta versus 10 to 12 people for, quote, unquote, interrogation. But really here, it's a burden of proof issue. I mean, once the persecutor bar is triggered, he has the burden of showing by a perpetrator. He wasn't there when they were tortured, right? There was no contention that he was there. Well, because there's an adverse credibility finding in this case, we don't really know what the facts are. There is an adverse credibility finding? As to the immigration judge and the board, they found that his testimony regarding his military duty. I understand. Assuming that we're talking about what was in the asylum interview, that that's the right story. Right. The immigration judge found that the asylum officer testimony, or that he gave there, was the credible version, because he appeared to say very frankly. Okay. But he didn't, on that version, he was never, he was not present for any torture? I don't believe so. He doesn't say if he, when he says they tortured them, he doesn't say how he knew that, whether he knew it at the time, whether he knew it later? Well, the assessment to refer to the asylum officer says that he testified that he knew at the time. And we know that when he was transferred from the asylum. And the asylum officer's assessment to refer. I understand that, but the notes don't say that. I don't believe the notes say that. Right. But he did, Mr. Solano did testify during immigration court that he knew of suspected torture of a guerrilla when he was transferring from Santa Marta to Bucaramanga. He knew of suspected torture, meaning he knew that there might be torture. Correct. Okay. And so, and then the fact that he said that we handed them to intelligence and they tortured them, it doesn't indicate that he learned it later. He does, in his immigration court testimony, try to backtrack from that and say that he only learned of this through news reports. Which is not inconsistent with what he said, in fact. I don't know that it compels the conclusion that there's no inconsistency there. I think, given what he said to the asylum officer, the bar was triggered. And then he had to show, through credible testimony, that the bar didn't apply. I do wonder about that regulation, to go back to that. My understanding is that regulation that you're relying on is applied to applications filed before April 1, 1997. Is that right? And that the later regulation is just a general regulation that says if the alien ordered, incited, and assisted, or otherwise participated. But it doesn't have this wish or burden. Am I wrong about that? I'm not sure I understand Your Honor's question. My question is whether the requirement of this burden shifting regulation that you're relying on actually applies to this case. It's the government's contention that this burden shifting applies. And it doesn't apply only to applications filed before April 1, 1997. That is my position, Your Honor. Well, it's either right or wrong. I mean, it doesn't say. Right. The government's position is that this regulation, the burden shifting regulation applies to this case. Okay. Because the statements made to the asylum officer ultimately were sufficient to raise the persecutor bar, and his inconsistent testimony was insufficient to rebut the application. Let me ask you one last question. There is an opinion, and I was on the panel, or maybe I wrote it, about a translator. Miranda Alvarado. Yes, Your Honor. What exactly is the difference between a translator who is physically present and somebody who's arresting people in the military in the context of the Civil War and turning this person over, but not being present and not being a participant in the actual torture scene? Sure. I see that my time is up, may I answer the question, please? Yes. In Miranda Alvarado, the Court did talk about levels of culpability, and they ultimately finding that the translator was on the margins of what would be culpable under the persecutor bar, they did discuss other activities that would presumably make someone more culpable, such as arresting someone and bringing them to the place of torture, which is what we have here. All right. But we don't – that's different. We have no idea that he brought them to the place of torture. We have his statement that we handed them to intelligence and they tortured them. Right. Which is not – we brought them to the place of torture. I would say that his statement is sufficient to raise that implication, which would then shift the burden for him to show that the bar does not apply. Okay. Thank you very much. Thank you very much. I thank both of you for your arguments. The case of Solano Rivera v. Holder is submitted. We'll go on to United States v. Quesada.
judges: Zouhary, Alarcon, Berzon